UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

THOMAS E. SLOTTKE, SR.,

      Plaintiff,

v.                                           Case No. 16-cv-1392-pp

STATE OF WISCONSIN DEPARTMENT
OF INDUSTRY LABOR AND HUMAN RELATIONS,
n/k/a DEPARTMENT OF WORKFORCE DEVELOPMENT,
THOMAS HARRINGTON, and
FIREMAN'S FUND INSURANCE COMPANY,

      Defendants.

---

**ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

---

**I. Background**

    A. <u>Facts Alleged in the Complaint</u>

On October 18, 2016, the plaintiff filed a *pro se* complaint, naming as defendants the "State of Wisconsin Department of Industry, Labor and Human Relations, Department of Workforce Development,"[1] "Thomas R. Harrington; Owner of National Technologies Inc.," and Fireman's Fund Insurance Company. Dkt. No. 1 at 1. In a sort of preamble, the plaintiff says that on October 18, 1991, he hurt himself while working for National Technologies, Inc.

---

[1] Although the plaintiff refers to this defendant throughout the complaint as the "State of Wisconsin Department of Industry Labor and Human Relations, Department of Workforce Development," it is now known simply as the Department of Workforce Development. The court will use that name in this order.

1

He says that defendants Thomas Harrington and Fireman's Fund manipulated the judicial process by claiming fraud, by saying that they needed time to investigate his disability and by assassinating his character to everyone he knew. Id. He says that the Department of Workforce Development ("DWD") violated his right to a fair and timely hearing "under their own guidelines." Id.

A list follows this preamble:

1. Fair and Timely Hearing under their own guidelines.
2. Manipulated a Federal Administrative Law Judge in 1994 disability hearing.
3. Manipulated the Workers Compensation Law Judge in 1997 hearing, in denying me treatment for my back.
4. Violation of the Separation of Church and State. 1994 to present.
5. Grant Theft Auto in 1994 Police Report #94-2780050
6. Blackmail of a good friend of mine.
7. Manipulated my Attorney, Michael Gillick. Denied treatment for back, while I received $100,000.00 minus 20%.
8. In 1994, Thomas R. Harrington enlisted his half-brother to become homeless in some sick twisted intimidation and harassment. All while paying the Milwaukee Rescue Mission, thousands of dollars.
9. I was born with cystic hygroma on the right side of the my neck and in the right chest cavity. In which left me with 1 functioning lung, scoliosis to the right on my thoracic spine and scoliosis to the left on my cervical spine.
10. I no longer have scoliosis, just pain. Because 1 out of the hundreds of people they assassinated my character with had pity on me and offered to pay for me to see his chiropractor.
11. Thomas R. Harrington did conspire with a local towing company, to tamper with my 1984 Chevy Cavalier.
12. Thomas R. Harrington tried to cover up Grand theft auto, using an attorney. Milwaukee Police Report #9402780050.
13. Do you think after all that they would have allowed me to get treatment? NO!
14. Character assassination continues to this day.

Dkt. No. 1 at 2. After the list, the plaintiff asserted that no one from the DWD ever came to question him about his allegations, and that it never helped him while all these things happened. Id. at 3.

The plaintiff asked for damages in the amount of $126.75 million dollars, and asked the court to issue search and seizure warrants. Dkt. No. 1 at 2-3. He indicated that he wanted to be "under oath," to tell the former governor of Wisconsin (Tommy Thompson) what the defendants had done to him. Id. at 3. He wanted a number of individuals, including defendant Harrington, on the stand under oath. He wanted the DWD to fine defendant Harrington $6.75 million dollars, "of which $750,000.00 to be put into a Roth IRA!" Id. He wanted the DWD to fine defendant Fireman's Fund $60 million dollars, and to make them give him a "supplemental insurance plan to offset Medicare" so that he will never have any other medical expenses. He asked the court to fine defendant DWD $60 million because "they never came to [his] aid while these things happened" to him. And he indicated that he wanted to settle the case with or without a grand jury. Id.

B. Procedural History

Shortly after the plaintiff filed the complaint, defendants Fireman's Fund Insurance Company and Thomas Harrington filed a motion to dismiss for failure to state a claim. Dkt. No. 3. The motion and the supporting brief referenced Fed. R. Civ. P. 12(b)(6). Dkt. Nos. 3, 4. In the supporting brief, the defendants characterized the plaintiff's claims as claims for property damage (dkt. no. 3 at 4), bodily injury (id.), fraud (id. at 5), legal malpractice (id. at 7)

3

and injury to the character of another (id. at 9) under Wisconsin law. The defendants asserted that the applicable statutes of limitation barred all of these claims. Dkt. No. 4. Neither document discussed the basis for this court's jurisdiction.

The court entered a briefing order requiring the plaintiff to respond by the end of the day on January 31, 2017, and ordered the plaintiff to serve the state defendant by January 16, 2017. Dkt. No. 5. The plaintiff filed his brief in opposition to the motion to dismiss, as well as two motions for discovery. Dkt. Nos. 6-8. On January 17, 2017, the court denied the plaintiff's motions and stayed discovery. Dkt. No. 10.

The DWD filed a motion to dismiss on January 31, 2017. Dkt. No. 11. The DWD asserted that it was immune from suit under the Eleventh Amendment, dkt. no. 12 at 2; that the plaintiff's claims (which the DWD characterized as personal injury, property damage and character injury claims under Wisconsin law) were barred by the applicable statutes of limitations, id. at 3; and that the Rooker-Feldman doctrine[2] barred the case, id. 3-4. Again, the DWD's brief did not discuss whether this court had jurisdiction.

The plaintiff responded with a request for an evidentiary hearing, a brief and a large poster board. Dkt. No. 16. On February 15, 2017, the court denied the request for an evidentiary hearing, and ordered that if the plaintiff did not respond to the motion to dismiss by March 3, 2017, the court would decide the

---

[2] Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983).

motion to dismiss without further input from the plaintiff. Dkt. No. 19. The plaintiff has not filed a response to the motion to dismiss, although he has since filed a document entitled "Motion to End Bullying, Intimidation, Character Assassination and Separation of Church and State and Due Process." Dkt. No. 20.

**II.    Analysis**

    A.    <u>The Court is Obligated to Determine Whether it Has Jurisdiction.</u>

This federal district court cannot consider the parties' arguments unless it has subject matter jurisdiction over the case. A court can, itself, raise the question of whether it has subject matter jurisdiction at any stage of the case. <u>Craig v. Ontario Corp.</u>, 543 F.3d 872, 875 (7th Cir. 2008) (citation omitted). Despite the fact that the plaintiff filed his complaint over a year ago, and the court has issued several rulings since, the court's review the defendants' motions has given it reason to question whether it has subject-matter jurisdiction. It concludes that it does not.

Federal district courts have subject-matter jurisdiction over a case if the case arises under the Constitution, laws or treaties of the United States. 28 U.S.C. §1331. This is called "federal question" jurisdiction. They also may exercise jurisdiction over a case if the amount of damages is $75,000 or more and the suit is between citizens of different states. 28 U.S.C. §1332. This is called "diversity" jurisdiction. In order for a court to have subject-matter jurisdiction based on diversity, there must be "complete diversity." "Complete diversity" means diversity "between all named plaintiffs and all named

5

defendants, and no defendant is a citizen of the forum State." Lincoln Property Co. v. Roche, 546 U.S. 81, 84 (2005).

In the complaint, the plaintiff indicated that he was suing under Wisconsin law. Dkt. No. 1 at 2. All three defendants interpreted the plaintiff's claims as claims under Wisconsin law. If the court accepts the plaintiff's assertion and the defendants' assumption, it cannot exercise jurisdiction over any state-law claims unless there is complete diversity between the plaintiff and the defendants against whom he brings state-law claims.

Wisconsin is the "forum state" because the plaintiff sued in Wisconsin. The plaintiff lives in Greenfield, Wisconsin. Dkt. No. 1 at 1. The DWD is located in Madison, Wisconsin, and is an agency of the State of Wisconsin. Id. The complaint indicates that Fireman's Fund Mutual Insurance Company had an address in Sacramento, California (id.); neither party has identified Fireman's state of corporate citizenship. Defendant Harrington is a resident of Mequon, Wisconsin. Id.

There is no diversity between the plaintiff and defendant Harrington, nor is there diversity between the defendant and the DWD. At first blush, then, the court has no jurisdiction over this case, because there is not "complete diversity."

Because the plaintiff does not have a lawyer and is representing himself, however, the court must go beyond first blush. The Supreme Court held long ago that courts must "liberally construe[]" a complaint filed by a *pro se* party. Estelle v. Gamble, 429 U.S. 97, 107 (1976). See also, Marshall v. Knight, 445

6

F.3d 965, 969 (7th Cir. 2006). A court may dismiss a *pro se* complaint, "however inartfully pleaded," for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972). "The essence of liberal construction is to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998).

Acting under this directive, the court cannot simply accept the plaintiff's statement that he is suing under Wisconsin law, nor must it make that assumption. The court must attempt, as the defendants did, to characterize the plaintiff's claims against Harrington and the DWD, to determine if they can possibly be construed as claims arising under the Constitution or federal law. If the court can identify a federal claim against each of these two defendants, the court has federal question jurisdiction, and can evaluate the parties' substantive arguments. On the other hand, if the court cannot identify a federal cause of action against either Harrington or the DWD, the court must dismiss the case for lack of subject-matter jurisdiction. Subject matter jurisdiction is not a technicality; a federal court has no authority to consider the merits when it determines subject matter jurisdiction is lacking, and must immediately dismiss the case. See Fed. R. Civ. P. 12(h)(3); State of Ill. v. City of Chicago, 137 F.3d 474, 478 (7th Cir. 1998).

The court has looked at the plaintiff's claims in an effort to find anything that it can construe as a federal cause of action. Because it cannot construe

7

any federal claims against defendant Harrington, the court must dismiss the case for lack of subject-matter jurisdiction.

   B.   The Court Does Not Have Subject Matter Jurisdiction.

The plaintiff's claims that Harrington manipulated judicial process, claimed fraud, manipulated an administrative law judge in 1994, manipulated a workman's compensation judge in 1997, manipulated the plaintiff's attorney, enlisted Harrington's half-brother to become homeless, and tried to cover up grand theft auto sound like fraud claims. General fraud claims arise under state law. There are federal laws that prohibit certain specific kinds of fraud—frauds against federal agencies, for example. But as far as the court can tell, the plaintiff is making general allegations that Harrington manipulated people to do what Harrington wanted, or covered things up. The court cannot find a way to construe these allegations as claims arising under the federal Constitution or federal law.

The plaintiff also claims that Harrington assassinated his character. This allegation might give rise to several claims under *Wisconsin* law—injury to character, defamation, libel or slander. But there is no independent federal cause of action for any of these injuries.

The plaintiff alleges that Harrington blackmailed a good friend, and committed "grand theft auto." Again, these are state-law claims; there is no federal civil cause of action for blackmail or car theft. There are federal criminal laws against extortion and car-jacking, but a private citizen like the plaintiff

8

cannot bring a criminal case. Only a federal prosecutor may bring a federal criminal case.

Finally, the plaintiff states that Harrington violated "the Separation of Church and State [] 1994 to present." Dkt. No. 1 at 2. Because the Supreme Court has said that the First Amendment to the United States Constitution "has erected a wall between church and state," Everson v. Board of Ed. of Ewing Twp., 330 U.S. 1, 18 (1947), this claims sounds as if it could be a claim arising under the Constitution. But it is not. The First Amendment actually states that "Congress shall make no law respecting an establishment of religion . . . ." U.S. CONST. AMEND. I. The First Amendment does not apply to private citizens like Harrington; it applies to the United States Congress.

Even construing the plaintiff's complaint liberally, the court concludes that the plaintiff has not alleged against Harrington any cause of action that arises under the Constitution or laws of the United States. The court does not have federal question jurisdiction as to Harrington; the only kind of jurisdiction it could exercise as to Harrington is diversity jurisdiction. The court does not have diversity jurisdiction as to Harrington, and thus, "complete diversity" does not exist. This means that the court does not have diversity jurisdiction, and thus, does not have subject-matter jurisdiction over this case. Because it does not have subject-matter jurisdiction as to Harrington, it must dismiss the complaint.

C.  Because the Court Does Not Have Subject Matter Jurisdiction, it Cannot Consider the Merits of the Plaintiff's Claims or the Parties' Motions.

Because the court does not have subject matter jurisdiction, it cannot consider, or rule on, the motion to dismiss filed by Fireman's and Harrington (dkt. no. 3), the motion to dismiss filed by the DWD (dkt. no. 11), or the plaintiff's motion to end bullying (dkt. no. 20).

**III. Conclusion**

Dismissal for lack of subject matter jurisdiction is without prejudice. Murray v. Conseco, Inc., 467 F.3d 602, 605 (7th Cir. 2006). The court **DISMISSES** this case **WITHOUT PREJUDICE**. The clerk of court shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30** days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28** days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a

reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 30th day of October, 2017.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**